1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MICHAEL SAINT-MARTIN and JOHN          No.  1:18-cv-00123-DAD-SKO
     DOE,
12
                    Plaintiffs,
13                                          ORDER DENYING MOTION TO DISMISS
            v.
14                                          (Doc. No. 16)
     BRANDON PRICE,
15
                    Defendant.
16

17

18          This matter comes before the court on defendant's motion to dismiss.  (Doc. No. 16.)

19   Plaintiffs opposed this motion on March 6, 2018, and defendant filed a reply on March 13, 2018.

20   (Doc. Nos. 19, 21.)  A hearing on the motion was held on April 5, 2018, with attorney Janice

21   Bellucci appearing on behalf of plaintiffs and Deputy Attorney General Lisa Tillman appearing

22   on behalf of defendant.  Having considered the parties' briefing and arguments of counsel, and for

23   the reasons discussed below, the court will deny defendant's motion.

24                                     **BACKGROUND**

25          This court previously heard and denied plaintiffs' a motion seeking a temporary

26   restraining order ("TRO").  (Doc. Nos. 4, 15.)  As such, the parties and the court are both familiar

27   with the factual allegations of the complaint, which will be reiterated here only summarily.

28   /////

1

1    In their complaint, plaintiffs' allege as follows.  Plaintiffs are patients at California State

2    Hospital – Coalinga ("CSH-Coalinga"), which is a psychiatric hospital overseen by the California

3    Department of State Hospitals.  (Doc. No. 1 at ¶ 14.)  Plaintiffs, as with many of the patients at

4    CSH-Coalinga, have been civilly committed under California laws such as the Sexually Violent

5    Predators Act ("SVPA").  (*Id.*)

6        In 2006, the City of Coalinga annexed CSH-Coalinga, making the patients there eligible to

7    vote in city elections.  (*Id.* at ¶ 15.)  The patients at CSH-Coalinga organized a group known as

8    Detainee-Americans for Civic Equality ("DACE") in 2010 to educate CSH-Coalinga patients

9    about their voting rights and to facilitate their civic engagement.  (*Id.* at ¶ 16.)  DACE was active

10   in the period preceding a November 7, 2017 election in Coalinga, which included a vote on a

11   local sales tax proposition known as Measure C, which had been intended to overcome a budget

12   shortfall and avoid the layoffs of twenty-three city employees.  (*Id.* at ¶ 17.)  Because Measure C

13   would have applied to goods sold in CSH-Coalinga, DACE lobbied city officials in October 2017

14   concerning the measure in the hopes of receiving increased access to transportation services for

15   visitors to CSH-Coalinga.  (*Id.* at ¶¶ 17–18.)  City officials failed to engage DACE in a

16   meaningful way in advance of the vote, and DACE recommended to its members that they vote

17   "no" on Measure C.  (*Id.* at ¶¶ 19–20.)  Measure C subsequently failed by a margin of 37 votes,

18   with voters from CSH-Coalinga casting 127 "no" votes, ultimately leading to an outcry amongst

19   city officials and efforts to remove or limit the patients' voting power.  (*Id.* at ¶¶ 21–24.)

20   Plaintiffs allege CSH-Coalinga staff tore down plaintiff Saint-Martin's flyers encouraging a "no"

21   vote on Measure C and told him patients should not vote in the election, but if they did, that

22   patients should vote in favor of Measure C.  (*Id.* at ¶ 29.)  Plaintiffs also allege that they believe

23   some of the city employees who lost their jobs are family members and friends of CSH-Coalinga

24   staff members.  (*Id.* at ¶ 25.)

25        According to plaintiffs, following the failure of the tax measure, staff at CSH-Coalinga

26   began a retaliatory campaign to deprive plaintiffs of tools they used to participate in local politics,

27   namely computers and electronic storage devices.  (*Id.* at ¶ 26.)  These items allowed patients to

28   draft documents about elections and other political issues and communicate with supporters,

attorneys, and government officials outside of the hospital.  (*Id.* at ¶ 27.)  In December 2017,

hospital staff encouraged CSH-Coalinga patients to digitize and then destroy hard copies of

various legal materials in order to free up physical space in the housing units and made scanners

and shredders available to the patients for that purpose.  (*Id.* at ¶ 30.)  However, later that same

month, emergency regulations were enacted[1] banning the same computers and storage devices

that stored plaintiffs' legal materials.  (*Id.* at ¶ 31.)  The emergency regulations were ostensibly

promulgated in order to address the distribution of child pornography at CSH-Coalinga.  (*Id.* at

¶ 34.)  However, plaintiffs assert that a ban on access to the Internet, which was designed to

remedy the possession and distribution of child pornography, had been in place since 2009, thus

indicating that there was no emergency need to change the regulations at issue.  (*Id.* at ¶ 35.)  In

light of these circumstances, plaintiffs allege that the rule changes were, in fact, carried out in

retaliation for patients at CSH-Coalinga voting "no" on Measure C.  (*Id.* at ¶¶ 41–42.)  Plaintiffs

allege that this retaliation violated their First Amendment rights, and that the emergency

regulations also violated their Fourteenth Amendment rights, because they amount to an attempt

to punish the plaintiffs for voting.  (*Id.* at ¶¶ 40–46.)

**LEGAL STANDARD**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.

1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of

sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901

F.2d 696, 699 (9th Cir. 1990).  A plaintiff is required to allege "enough facts to state a claim to

relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009).

---

[1]  Emergency regulations in California are promulgated pursuant to California Government Code §§ 11346.1 and 11349.6, which permits agencies to engage in rulemaking on an expedited basis without fulfilling various notice and analysis requirements.

3

1    In determining whether a complaint states a claim on which relief may be granted, the

2    court accepts as true the allegations in the complaint and construes the allegations in the light

3    most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v.*

4    *United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). However, the court need not assume the truth

5    of legal conclusions cast in the form of factual allegations. *United States ex rel. Chunie v.*

6    *Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed

7    factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me

8    accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and

9    conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S.

10   at 555. *See also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action,

11   supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to

12   assume that the plaintiff "can prove facts which it has not alleged or that the defendants have

13   violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal.,*

14   *Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

15        In ruling on such a motion, the court is permitted to consider material which is properly

16   submitted as part of the complaint, documents that are not physically attached to the complaint if

17   their authenticity is not contested and the plaintiff's complaint necessarily relies on them, and

18   matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).

19                                              **ANALYSIS**

20        Defendant argues that plaintiffs have failed to allege sufficient facts to state a First

21   Amendment retaliation claim and cannot maintain a Fourteenth Amendment claim because they

22   have no right to possess computers as a matter of law.[2]  (Doc. No. 16-1 at 15–23.) These

23   arguments will be addressed in turn below.

24

---

25   [2]  Defendant here also argues that plaintiffs cannot state a claim for the "deprivation of treatment"
     under the Fourteenth Amendment. (Doc. No. 16-1 at 21–23.) Plaintiffs do not directly address
26   this argument. The court observes plaintiffs have alleged in their complaint that defendant
     violated their Fourteenth Amendment rights by: (1) punishing them for their political organizing;
27   and (2) imposing "unconstitutionally excessive" regulations. (Doc. No. 1 at ¶¶ 44–45.) No
     deprivation of treatment claim is alleged by plaintiffs. Therefore, defendant's motion will be
28   denied as moot in this regard.

## A.     First Amendment Retaliation

First Amendment retaliation, at least in the prison context,[3] entails five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote omitted).

In the pending motion to dismiss, defendant makes three separate arguments: (1) that plaintiffs' complaint reflects insufficient factual allegations of a retaliatory motive; (2) that plaintiffs have not alleged they suffered any harm and as such, the exercise of their First Amendment rights were not chilled; and (3) that plaintiffs cannot plead that the regulatory action taken did not reasonably advance a legitimate correctional goal. (Doc. No. 16-1 at 15–18.) The court will address each of these arguments in turn.

According to the allegations of the complaint, plaintiffs were among a group of patients at CSH-Coalinga who organized an opposition to a sales tax measure, helped defeat the measure, and thereby presumably contributed to the potential layoff of twenty-three city employees. The plaintiffs also allege that staff at CSH-Coalinga warned them not to vote in the election, warned them to vote in favor of the sales tax measure if they did vote, and tore down posters that encouraged DACE members to vote against the sales tax measure. Plaintiffs also plausibly allege that staff members from CSH-Coalinga are friends and family members of city employees who risked being laid off. Moreover, the tax measure failed in a vote taken in November 2017, and the emergency regulations were promulgated in December 2017. Timing may be circumstantial evidence of retaliation, *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995), as may "comments indicating vindictiveness," *Estrada v. Gomez*, No. C 96-1490 S1 (PR), 1198 WL 514068, at *3 (N.D. Cal. Aug. 13, 1998). The regulations were promulgated on an emergency basis shortly after the failed tax measure, which supports an inference of retaliatory intent. Further, the alleged

---

[3] As the court has previously noted, plaintiffs here are civil detainees, not prisoners, a distinction that is sometimes legally relevant, but does not appear to be so as to First Amendment retaliation claims. (Doc. No. 15 at 5 n.3.)

comments and actions by CSH-Coalinga staff suggest vindictiveness. The court concludes that the factual allegations of plaintiffs' complaint are at least sufficient to make it plausible that the regulations were promulgated with a retaliatory motive. *Twombly*, 550 U.S. at 556 ("Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage.").

Additionally, the regulations in question expressly strip the patients at CSH-Coalinga of their ability to individually possess electronic devices they have previously been allowed to possess. The confiscation and/or destruction of personal property is a sufficient adverse action to state a First Amendment retaliation claim. *See Rhodes*, 408 F.3d at 568; *Hines v. Gomez*, 108 F.3d 265, 269 (9th Cir. 1997) (holding deprivation of television was sufficient to state retaliation claim); *Rodriguez v. Fisher*, No. CV 06-2826-PCT-JAT (MHB), 2008 WL 3286506, at *8 (D. Ariz. Aug. 7, 2008) ("[C]onduct that causes loss of property . . . would chill or silence an ordinary citizen."). Accordingly, the court finds the allegations of plaintiffs' complaint to be sufficient as to this element as well.

Finally, defendant argues plaintiffs have not alleged facts showing that the regulatory action did not reasonably advance a legitimate treatment or threat reduction goal.[4] (Doc. No. 16-1 at 18.) The fifth element of plaintiffs' retaliation claim requires them to allege facts demonstrating that the regulations do "not reasonably advance a legitimate [treatment or threat reduction] goal," *Rhodes*, 408 F.3d at 568, or were "not tailored narrowly enough to achieve such goals." *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) (quoting *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985)). Importantly, "[t]he plaintiff bears the burden of pleading and proving the absence of legitimate [treatment or threat reduction] goals for the conduct of which he complains." *Pratt*, 65 F.3d at 806.

/////

---

[4] As the court has previously noted, plaintiffs are civil detainees and not prisoners, and therefore there are no legitimate "correctional" goals that defendant may pursue in relation to them. (Doc. No. 15 at 6 n.5.) The court therefore evaluates this element of plaintiffs' claim in light of any proffered legitimate treatment and harm reduction goals. *Hubbart v. Superior Court*, 19 Cal. 4th 1138, 1170–78 (1999) (finding the SVPA was not punitive and noting its goals were to treat those committed by it and reduce the threat of harm to the general public); *People v. Buffington*, 74 Cal. App. 4th 1149, 1152 (1999) (same).

1      In this regard, defendant argues that there are two legitimate treatment and threat

2   reduction goals achieved by the regulations preventing the possession of electronic devices: (1)

3   preventing the ability to view and disseminate child pornography; and (2) better controlling the

4   patients' exposure to "triggers, stimulants, and temptations." (Doc. No. 16-1 at 18.)

5      Plaintiffs do not dispute, that preventing the dissemination of child pornography is a

6   legitimate institutional goal for CSH-Coalinga. Similarly, plaintiffs do not dispute that reducing

7   exposure to unspecified "triggers, stimulants, and temptations" may be a legitimate part of

8   treatment. However, plaintiffs argue in opposition to the pending motion that the regulations at

9   issue do not "reasonably" advance these goal, because there is no indication that the possession of

10  child pornography at CSH-Coalinga is sufficiently widespread to merit the "wholesale ban on

11  electronic storage devices." (Doc. No. 19 at 10–11.)

12     In his reply, defendant asserts that the eleven arrests of CSH-Coalinga patients for

13  possession of child pornography in 2017 were "the proverbial 'tip of the iceberg,'" and that "at

14  least 200 individuals" at CSH-Coalinga have been involved in the possession or transmission of

15  child pornography. (Doc. No. 21 at 4.) What the parties dispute here—the extent of child

16  pornography possession at CSH-Coalinga, and thus, the reasonableness of these regulations in

17  advancing the obviously legitimate goal of preventing its dissemination—is the type of

18  quintessentially factual issue which cannot be resolved on a motion to dismiss.[5]  *See, e.g.*, *In re*

19  *Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420-YGR, 2014 WL 4955377, at *13 (N.D.

20  Cal. Oct. 2, 2014) (noting that factual questions cannot be resolved at the pleading stage); *Ranch*

21  *Realty, Inc. v. DC Ranch Realty, LLC*, 614 F. Supp. 2d 983, 990 (D. Ariz. 2007) (same).

22

---

23  [5] Defendant requests that the court judicially notice the regulations at issue in this case, which
    include statements about the extent of the distribution of child pornography at CSH-Coalinga.
24  (*See, e.g.*, Doc. No. 16-3 at 30) (noting that at least 200 individuals at CSH-Coalinga have been
    involved in the dissemination of such material, with two to three new cases reported each month).
25  While the regulations themselves are undoubtedly appropriate for judicial notice, the court may
    not judicially notice them for the truth of their contents. *See Rocky Mountain Farmers Union v.*
26  *Goldstene*, 843 F. Supp. 2d 1071, 1083 (E.D. Cal. 2011), *rev'd on other grounds*, 730 F.3d 1070
    (9th Cir. 2013); *see also Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001). While
27  such evidence might be of relevance on a motion for summary judgment, it cannot be considered
28  by the court in disposing of the pending motion to dismiss.

1    In sum, plaintiffs have included sufficient factual allegations in their complaint to survive

2    a motion to dismiss.  It is not appropriate for the court to consider or weigh evidence at this stage

3    of the proceeding.  *See, e.g.*, *SST Sterling Swiss Tr. 1987 AG v. New Line Cinema, Corp.*, No. CV

4    05-2835 DSF (VBKx), 2005 WL 6141290, at *2 n.1 (C.D. Cal. Oct. 31, 2005) ("On a motion to

5    dismiss pursuant to Rule 12(b)(6) it is not appropriate to consider materials outside the pleadings

6    when not attached or referred to in the complaint.").  However, the court observes once again, as

7    it noted in explaining the denial of plaintiffs' motion for a temporary restraining order, that the

8    defendant has already alluded to the existence of significant evidence indicating that the

9    regulations at issue had been long planned and were not retaliatory in nature.  (*See* Doc. No. 15 at

10   7 n.7) (observing that these regulations were first adopted in 2009 and made permanent in 2010,

11   but were subject to a voluntary moratorium until 2018 because they were the subject of consistent

12   litigation by patients at CSH-Coalinga).  If this is the case, and no evidence is forthcoming that

13   shows the timeline to implement these regulations was changed or advanced due to plaintiffs'

14   political activities, plaintiffs' case would appear to be without merit.  Plaintiffs and plaintiffs'

15   counsel are cautioned that pursuing litigation without evidentiary support for the allegations made

16   may result in the imposition of sanctions.  *See* Fed. R. Civ. P. 11(b)(3); *Truesdell v. S. Cal.*

17   *Permanente Med. Grp.*, 293 F.3d 1146, 1153–54 (9th Cir. 2002); *Ass'n of Women with*

18   *Disabilities Advocating Access v. Mouet*, No. 06cv2240 JM(LSP), 2007 WL 951837, at *2–3

19   (S.D. Cal. Mar. 23, 2007).

20       **B.      Fourteenth Amendment Punitive Conditions Claim**

21       Defendant also moves to dismiss plaintiffs' Fourteenth Amendment claim, arguing that

22   plaintiffs have no cognizable constitutional right to possess computers and that the regulations at

23   issue serve patient treatment and public safety goals.  (Doc. No. 16-1 at 18–21.)  Plaintiffs argue

24   that the regulations at issue are punitive in nature, because they were promulgated to punish them

25   for their political activities.  (Doc. No. 19 at 17–20.)  Alternatively, even if they were not

26   promulgated for that specific purpose, plaintiffs assert that there is a presumption that the

27   regulations are punitive because they are similar in nature to regulations governing prisoners in

28   California.  (*Id.* at 20–21.)

8

As set out above, plaintiffs successfully pleaded a First Amendment retaliation claim against defendant, alleging that the regulations at issue were promulgated to retaliate against the patients' political activities. The complaint asserts that plaintiffs' Fourteenth Amendment rights were also violated because these regulations were intended to retaliate against them. (Doc. No. 1 at ¶ 44.) Actions taken to retaliate against a detainee are punitive in nature, and such an action would reflect a "substantial departure from accepted professional judgment." *See Youngberg v. Romeo*, 457 U.S. 307, 323 (1982); *Jones v. Blanas*, 393 F.3d 918, 931–32 (9th Cir. 2004)[6]; *see also Hughes v. Farris*, 809 F.3d 330, 334 (7th Cir. 2015) (alleged retaliatory suspension of vocational training would violate *Youngberg* standard); *Brandt v. Ganey*, No. 3:06-cv-5639-FLW, 2008 WL 5416393, at *4–5 (D.N.J. Dec. 22, 2008) ("Ultimately, if a jury decides that [defendant's] actions were done out of spite or vindictiveness, her actions would not be afforded deference under the *Youngberg* test and constitute a violation of Plaintiff's Due Process rights."); *Henderson v. Adams*, No. No. 06 C 6451, 2007 WL 1958574, at *4 (N.D. Ill. June 29, 2007) ("Otherwise permissible actions by prison officials are impermissible if done with a retaliatory motive."); *cf. Bruce v. Ylst*, 351 F.3d 1283, 1289–90 (9th Cir. 2003) ("[P]rison officials may not defeat a retaliation claim on summary judgment simply by articulating a general justification for a neutral process, when there is a genuine issue of material fact as to whether the action was taken in retaliation for the exercise of a constitutional right."); *Hydrick v. Hunter*, 500 F.3d 978, 993

---

[6] This court previously noted that the *Youngberg* standard applies to this case, observing that the decision in *Jones* was not directly on point. (*See* Doc. No. 15 at 8, n.8.) Plaintiffs argue that the court's application of *Youngberg* is incorrect, because that standard "is reserved for medical- and treatment-related claims, rather than punitive conditions claims." (Doc. No. 19 at 18.) A reading of *Youngberg* does not support that contention. In any event, *Youngberg* and *Jones* are not inconsistent, and *Jones*, while not directly on point, informs the court's understanding of *Youngberg*. The basic underlying principle of civil detention established in *Youngberg* is that civilly committed individuals may not be subject to conditions that are punitive in nature. *See* 457 U.S. at 319, 321–22. While *Youngberg* refers to a presumption that these decisions are valid unless they are a significant deviation from accepted professional standards, *id.* at 323, implicit in this holding is the recognition that a professional caring for the civilly committed may not seek to punish them. To the extent the court in *Jones* held a presumption of punishment arises when civilly committed individuals are confined in the same conditions as their criminal counterparts, this is not contrary to and is in fact supported by the Supreme Court's decision in *Youngberg*. *Jones*, 393 F.3d at 932 (citing *Youngberg*, 457 U.S. at 321–22, and *Sharp v. Weston*, 233 F.3d 1166, 1172–73 (9th Cir. 2000)). Nevertheless, *Youngberg* is ultimately the controlling law.

(9th Cir. 2007) (noting that a retaliatory search or seizure would violate the Fourth Amendment rights of a civilly committed individual), *overruled on other grounds*, 556 U.S. 1256 (2009); *Pratt v. Rowland*, 65 F.3d 802, 806–07 (9th Cir. 1995).

Because plaintiffs have alleged the regulations at issue were promulgated with a retaliatory motive, they have alleged a cognizable Fourteenth Amendment claim.[7]

## CONCLUSION

For these reasons, defendant's motion to dismiss (Doc. No. 16) is denied.

IT IS SO ORDERED.

Dated: __**June 6, 2018**__

_____
UNITED STATES DISTRICT JUDGE

---

[7] The complaint also alleges, and plaintiffs argue in opposition to the pending motion, that even if their retaliation claim fails, they may pursue an alternative theory of Fourteenth Amendment liability because these regulations are excessive and thus amount to punitive conditions. (Doc. No. 1 at ¶ 45; Doc. No. 19 at 18–19.) Because the defendant's motion to dismiss must be denied, the court need not address this alternative contention. As previously stated, the Ninth Circuit has held a civilly committed individual detained under the same or similar conditions as those applied to prisoners raises a rebuttable presumption that the conditions are punitive. *Jones*, 393 F.3d at 932. Because the presumption is rebuttable, the defendant "must be given an opportunity to explain what legitimate, non-punitive purpose justified [the detainee's] detention under these conditions." *Id.* at 934. Whether plaintiffs can establish that these regulations are similar to California's prison regulations and whether the defendant can rebut any presumption arising therefrom are issued better suited for resolution at a later stage of this proceeding.